## Morris et al. *v.* Bender (et al., Appellant).

Argued January 24, 1935. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

534

*George H. Detweiler,* for appellant.

*Peter P. Zion,* with him *Jacob Boonin,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, March 25, 1935:

The minor plaintiff, by her father and mother as her next friends, and the father and mother in their own right, recovered judgments against defendant, for the damages which each of them sustained when defendant's automobile ran off the cartway of Torresdale Avenue in the City of Philadelphia, onto the footway thereof, and struck and seriously injured the minor. Upon the judgments thus recovered an attachment sur judgment was issued naming the Bankers Indemnity Insurance Company, appellant herein, as garnishee. It pleaded nulla bona and the case was duly tried resulting in a verdict in favor of the minor and against the garnishee. Most of the exceptions taken during the trial grew out of various attempts, vainly made by the garnishee, to attack collaterally the original judgments in favor of plaintiffs and against defendant. Thereafter the garnishee made motions for a new trial and for a judgment non obstante veredicto, decisions regarding which were evidently temporarily held up to enable the garnishee to make a direct

attack on the original judgments. This the garnishee did, but, its rule for that purpose having been heard and discharged, the court below likewise discharged the rules for judgment non obstante veredicto and for a new trial in the attachment sur judgment proceedings. Thereupon the garnishee took these four appeals, apparently,— though the printed record does not disclose the fact,— two of them from the refusal to open the original judgments in favor of the minor plaintiff and her next friends respectively, and the other two from the refusal of a new trial and for judgment non obstante veredicto in the attachment sur judgment proceedings. We probably could affirm all these judgments because appellant's brief and record are in so many respects in express violation of the rules of court, largely due to an attempt to cover four different appeals from two different judgments in one brief and record, resulting, doubtless, in a saving of the expense of printing, but equally resulting in a confused and unsatisfactory presentation of the controversy.

Taking up first the direct attack upon the original judgments in favor of plaintiffs, we find appellant's basic allegation to be that defendant did not reside at the address at which the writ of summons was alleged to have been served. As appellant was not a party to that proceeding it has no standing to question the return of service of the writ: Black v. Nease, 37 Pa. 433; Bank v. Munford, 3 Grant 232; Com. v. Groezinger, 113 Pa. Superior Ct. 365. Apparently recognizing that this is ordinarily so, appellant claims that the return was a fraud upon it. We need not determine whether or not, if this were true, the question could have been raised at the time it was or in the way it was, for it is not true. The sheriff's return is that the writ was served by "handing May 3, 1930, a true and attested copy of the within writ to an adult member of said defendant's family at No. 108 Richmond Street in the County of Philadelphia, State of Pennsylvania, the dwelling house of defendant." It may not be amiss to note, that the address of defendant, as given in

that return, is his address as stated in the insurance policy issued by appellant, and out of which most of this litigation arises. On the face of the return it complies with all the statutory requirements as to service of writs, and hence cannot be attacked collaterally. If it is false, the only remedy by one who has been injured thereby is by an action against the sheriff for a false return: Rittenberg et al. v. Stein, 97 Pa. Superior Ct. 554. The depositions taken by appellant purported to show that defendant's wife and children resided at the address stated in the return, but defendant did not. The deputy sheriff evidently did not believe this supposed fact, assumed by appellant to be true, and was willing to take whatever responsibility arose from the return made by him. It is more than doubtful whether the garnishee had any standing to attack the return under any circumstances, but it so loudly proclaimed that the return was the result of fraud, that the court below gave it the opportunity to produce whatever proof it had on the point. It had none. Plaintiffs were not shown to have had any connection whatever with the service or return of the writ, and hence there was no other course to be pursued than to discharge appellant's rule to open the original judgment. This necessitates an affirmance of the appeals taken from that order.

Turning then to the assignments of error, we find that two of them relate entirely to the direct attack on the judgment. These we have already considered. Seven others are attempts to attack collaterally the original judgment, on the trial in the attachment sur judgment proceedings. In view of the failure of the direct attack, these, of course, must be dismissed. Two others, exactly alike in language, relate to the trial judge's inquiry as to the effect of a certain offer made by appellant's counsel. The inquiry was justified and, in any event, affords no valid basis for an assignment of error. One other alleges error because the court below did not grant a new trial for the universally stated and usually inapplicable rea-

sons: that "the verdict is against the law," and "the verdict is against the weight of the evidence." Granting or refusing a new trial is a discretionary matter with the court below, unless an abuse of discretion is shown, and none such appears here; indeed, none is alleged.

The other assignments relate to the refusal to give binding instructions for the garnishee and to the refusal to enter judgment in its favor non obstante veredicto. This is the only interesting point in the case, but it is free from doubt. Appellant's liability arises, if at all, out of a policy of automobile accident insurance issued by appellant to the original defendant. At the trial it was agreed by counsel for the respective parties that, aside from the questions growing out of the alleged improper service of the writ of summons in the original suit (already considered), the "issue is limited to the question of whether or not there was a lack of coöperation by the defendant, Edward K. Bender, as required in the policy, and whether or not Edward K. Bender failed to serve and deliver or turn over to the garnishee insurance company the processes and the copy of statement of claim as required by the policy, and the question is whether or not said failure and lack of coöperation as claimed is a material question and one that substantially prejudiced the garnishee."

It is conceded that defendant did not promptly give to the garnishee the notices and papers required by the policy; but plaintiff did, and thereby the garnishee was promptly and fully advised throughout the entire proceedings. In this status, the matter is covered by the recent case of McClellan v. Madonti, 313 Pa. 515, where we said: "One who becomes entitled to performance by an insurer on a policy of indemnity must be treated as authorized to perform any condition, [a] breach of which by the insured would destroy his right to performance by the insurer. Where a policy of automobile indemnity insurance requires that the assured give written notice of any accident, and like notice of any claim or suit resulting therefrom, together with every summons or

other process, such notice may be given by one who has sustained damage as a result of the negligent operation of the automobile by the assured. If the insurer is not harmed, it will not be allowed to complain that notice was not given to it in the precise manner specified in the policy."

Upon this point the trial judge, in his opinion refusing a new trial, accurately states the facts to be as follows: "1. There can be no question about the insurance company receiving actual, prompt and formal notice of the accident from the defendant himself. The accident happened on January 27, 1929. On the same day the defendant notified his broker of it, and the latter, on the following morning, reported it to the insurance company. The latter's investigator, McCool, so testified and added that he was told by the broker that 'Bender had a very bad accident and that the girl was seriously injured and he thought I had better attend to it on account of the seriousness of the accident.' (This becomes important later because of the company's statement that it thought the injuries were trifling.) In response to a letter from the company Bender called at its office and made a full written report of the accident. During the six months following, the company's doctors made three medical examinations of the injured child. Dr. Moss on February 15, 1929, and March 30, 1929, and Dr. Newbauer on June 19, 1929.

"Mr. Zion was retained by the plaintiffs, negotiated with the company, and on June 21, 1929, notified it of his intention to bring suit on June 25, 1929. He did so on that date, and service was [duly] made of the summons. . . .

"When the case appeared on the trial list for April 22, 1931, counsel for plaintiff notified the company of the date and place of trial, and on April 22, 1931, sent it a copy of the statement, and offered to have the trial postponed. The company replied that it would look to the insured (the defendant) for information concerning the

litigation. The trial was in fact postponed several times and was had on March 18, 1932, almost a year after the correspondence between the company and plaintiff's attorney began.

"We have gone into these details so that it may be evident that from the day after the accident until the trial of the garnishment proceedings the company had prompt and full information of the accident, the seriousness of the minor plaintiff's injuries, of the intention of the injured plaintiff to bring suit, and, later, but before the trial, of the pendency of the suit, with ample opportunity to investigate the facts of the accident and the seriousness of the injuries, and that it did make all the investigation it thought needed be made."

The facts thus accurately stated, brings this case squarely within the principle quoted from McClellan v. Madonti, supra, and justifies the refusal to enter judgment for the garnishee notwithstanding the verdict.

The orders and judgments appealed from are each and all affirmed.