## Scotney v. Wessaw et al.

552

*Michael A. Foley*, for use-plaintiff.
*Thomas E. Comber, Jr.*, for garnishee.

CRUMLISH AND SLOANE, JJ., March 6, 1946.—This matter is before us on use-plaintiff's rule for judgment on the record, interrogatories and answers. From the record, as we have it before us, the material facts are these: There was an automobile accident on May 26, 1943, at Thirty-ninth and Chestnut Streets, Philadelphia. The accident involved two automobiles, one operated in an easterly direction on Chestnut Street by Robert P. Regester, who was alone, and the other operated in a northerly direction on Thirty-ninth Street by Thomas J. Wessaw, with whom one George Ray was riding. The automobile which Wessaw was operating, in consequence of the collision went up on the sidewalk and struck Ralph C. Scotney, a pedestrian, injuring him seriously.

Scotney sued Regester, Wessaw, Ray and the Middle Department Rating Association. Wessaw and Ray both worked for the Middle Department Rating Association and at the time of accident were in the course of employment; in their mutual employment, Ray was Wessaw's superior. Ray was the owner of the automobile Wessaw was driving. The jury returned a verdict in favor of Scotney for $25,000 against all defendants, Regester, Wessaw, Ray and the Middle Department Rating Association.

The Indemnity Insurance Company of North America insured Regester's automobile under a policy with a limit to $10,000 for an injury to one person. The same company also insured the automobile owned by

Ray and driven by Wessaw, under the "omnibus clause" of which it extended coverage to Wessaw who was operating the automobile with the permission of the named insured, Ray. The limit of coverage was $5,000 on account of injury to one person. The limits of coverage under both these policies were paid by the Indemnity Insurance Company of North America, a total of $15,000, against the verdict of $25,000, leaving an unpaid balance of $10,000.

Additionally, the Indemnity Insurance Company of North America issued to the Middle Department Rating Association, under its National Standard Automobile Liability form, an Employer's Non Ownership automobile Liability Endorsement (Blanket Coverage), covering the Middle Department Rating Association with respect to its liability for bodily injury and property damage caused by automobiles not owned by it but used in its business, with a limit of liability of $100,000 on account of injury to one person. This particular type of coverage was secured by issuing the standard automobile form, above, but listing no automobiles as owned by the insured in the required schedule, then, by endorsement, providing for the nonownership contingent liability. This endorsement provided:

*"Application of Insurance.* (*a*) The insurance applies only to the named insured. (*b*) The insurance applies only to the use, by any other person than the named insured, of any automobile or motorcycle of the private passenger type, in the business of the named insured as expressed in the declarations, and to the use in such business, by any employe of the named insured, of any automobile of the commercial type if such use is occasional and infrequent. . . . *Other Insurance.* The insurance afforded hereby shall be excess insurance over any other valid and collectible insurance available to the named insured, either as an insured under a policy applicable with respect to the automobile or otherwise, against a loss covered hereunder."

Garnishee, General Accident Fire and Life Assurance Corporation, Ltd., had issued a policy of insurance to Wessaw covering his 1933 Chevrolet automobile, with a limit of $10,000 on account of liability for injury to one person. This automobile was not involved in the accident, but there is a provision in the policy insuring Wessaw "with respect to the operation of any other private passenger automobile, by such named insured . . .", commonly called the drive-other-cars coverage. Under this coverage extending protection to Wessaw while operating any other private automobile, coverage is also extended to his employer, as insured, except for automobiles owned in full or part by the employer, or registered in the name of the employer, or hired by the employer as part of a frequent use of hired automobiles. The policy makes this reference to other insurance:

"*Other Insurance.* If the insured has other insurance against a loss covered by this policy the corporation shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss: provided, however, that the insurance under Paragraph IV (the drive-other-cars coverage) shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to the automobile or otherwise, against a loss covered under said paragraph."

The Middle Department Rating Association paid the balance of the judgment due plaintiff in the sum of $10,214.66, and on petition the court marked the judgment in favor of the Middle Department Rating Association against Thomas J. Wessaw to that amount. The General Accident Fire and Life Assurance Corporation, Ltd., was brought in as garnishee under an attachment sur judgment issued by use-plaintiff. Inter-

rogatories were filed by use-plaintiff and answered by garnishee. Use-plaintiff then filed a rule for judgment on the record, interrogatories and answers. (The familiar rule that a settlement or satisfaction received from one of two or more joint tortfeasors operates to discharge all of them was not advanced, and we think has no application.)

The position of use-plaintiff may be stated thus: (*a*) Since, under the doctrine of respondeat superior, use-plaintiff was called upon to pay the balance of the judgment, it is entitled to collect from its servant any payment made to the third person because of the negligence of the servant; and (*b*) since the policy of insurance held by it is nonownership employer's contingent liability coverage, and excess insurance, it is not available in any way to Wessaw; therefore, the employer, having had plaintiff's judgment marked to its use, is entitled to recover from garnishee the full extent of the protection afforded Wessaw by garnishee under the drive-other-car contract of indemnity ($10,000).

Contra the rule for judgment, garnishee asserts two propositions: (*a*) The failure of the insured, Wessaw, to comply with the condition of his policy to forward suit papers to the insurer voids the policy. The condition reads:

"5. *Notice of Accident—Claim or Suit.* Upon the occurrence of an accident written notice shall be given by or on behalf of the insured to the corporation or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses. If claim is made or suit is brought against the insured, the insured shall immediately forward to the corporation every demand, notice, summons or other process received by him or his representative"; and

(*b*)  If the policy issued by garnishee to Wessaw is not voided for the reason set out in (*a*), then it is excess insurance, and since there is other excess insurance covering the same loss, held by the Middle Department Rating Association, under its nonownership policy, the liability of garnishee would bear only such proportion to the loss remaining, after payment of the primary insurance, as its policy limits bear to the total amount of excess insurance available.  The coverage limit for injury to one person in garnishee's policy issued to Wessaw is $10,000, and use-plaintiff's policy of contingent nonownership liability is $100,000, a total of $110,000 in excess insurance.  Garnishee's proportion is herefore one eleventh of the loss, or $928.61.  At the oral argument this contention was amplified by garnishee asserting that since the drive-other-cars coverage afforded Wessaw also included Wessaw's employer as an insured, any other insurance the employer, the Middle Department Rating Association, had would have to share in its proportion the claim against Wessaw.

Where an employer has been held liable in damages to a third person because of the negligent performance of his duties by an employe, the employer is entitled to a recovery over against the negligent employe:  East Broad Top Transit Co. v. Flood, 326 Pa. 353, 356 (1937) ; Parker v. Rodgers, 125 Pa. Superior Ct. 48 (1937) ; Campbell v. Williamson, 1 Phila. 198 (1851) ; A. L. I. Restatement of the Law of Agency, sec. 401, comment (*c*) ; 35 Am. Jur. 530, sec. 101; 39 C. J. 1313, sec. 1514; 110 A. L. R. 834.  And, since they are not joint tortfeasors, guilty of an intentional wrong, this right over exists notwithstanding the joint verdict rendered against them:  Goldman et al. v. Mitchell-Fletcher Co., 292 Pa. 354 (1928).

Our central concern, in these attachment proceedings, relates to the assets of Wessaw now in the hands of garnishee, which in turn, must be determined from

the relationship existing between Wessaw and garnishee as defined in the contract of insurance issued to Wessaw. The rights of use-plaintiff are derivative, and can rise no higher than those of the insured, Wessaw, in whose shoes use-plaintiff stands. If Wessaw could not recover from garnishee, under terms of the policy, then use-plaintiff, as an attaching creditor, cannot: Speca v. Bucci Construction Co., 139 Pa. Superior Ct. 76, 82 (1940) ; Cameron v. Berger, 336 Pa. 229, 233 (1939) ; Laroche v. Farm Bureau Mutual Automobile Ins. Co., 335 Pa. 478 (1939).

Garnishee's denial of liability is based on the contention that Wessaw failed to forward the summons to it, as required by the fifth condition of the policy, and that this breach voided the policy. This condition is a condition precedent, and the failure of the insured to comply with it releases the insurer from its obligations under the contract: Unversagt v. Prestera, 339 Pa. 141, 144 (1940) ; Keyes to use, v. Continental Casualty Co., 121 Pa. Superior Ct. 359 (1936). See Ross v. Mayflower Drug Stores, Inc., 338 Pa. 211, 215 (1940). However, what constitutes compliance with the condition varies with the facts of the different cases. In Ross v. Mayflower Drug Stores, Inc., supra, and Unversagt v. Prestera, supra, the failure was that of the insured, or anyone else, to give the insurer notice of the accident. Admittedly, in the instant case, the insurer had prompt notice of the happening of the accident. Following receipt of the accident notice the insurer sent its investigator to interview Wessaw at his place of employment, August 20, 1943, and the investigator secured signed statements from Wessaw and from Ray. At that time Wessaw notified the investigator that he had received a summons in the case arising out of the accident, which summons he had turned over to the Indemnity Insurance Company of North America. Garnishee admits this in its answer to the 16th interrogatory. Garnishee places great reliance on Keyes

v. Continental Casualty Co., supra, where it was held that the failure of the insured to give the insurer any notice of the bringing of the action until over 11 months after suit was brought, and only two or three days before it was listed for trial, was held to relieve the insurer of its obligations under the contract. In our case, however, Wessaw notified garnishee's investigator of the commencement of the action, whereas in the Keyes case the disclaimer was based on lack of notice of the suit as well as failure to send the summons as required.* To this extent, then, garnishee had notice of the commencement of the action against Wessaw. Garnishee further knew that Wessaw had turned over the summons to the Indemnity Insurance Company of North America because the latter company extended primary coverage to Wessaw under the omnibus clause of the policy issued to Ray. Garnishee sat back in reliance that the coverage it afforded was excess insurance. Though the facts upon which the disclaimer is based came to its attention as early as August 20, 1943, garnishee did nothing. Its duty, at the time its rights matured, was to deny by disclaimer, and it was then it should have acted: Basoco v. Just et al., 154 Pa. Superior Ct. 294, 298 (1944). See Gross et al. v. Kubel et al., 315 Pa. 396 (1934), and Orcutt v. The Erie Indemnity Co., 114 Pa. Superior Ct. 493, 498 (1934). Garnishee does not claim it was prejudiced by the failure of the insured to turn over the summons to it.

" 'In contracts of this kind, to escape liability, the insurer must show that the breach is something more than a mere technical departure from the letter of the bond, —that it is a departure that results in a substantial

---

* See the letter of disclaimer in the Keyes case, set out in the marginal matter on p. 364: ". . . but she gave us no notice whatever of the filing of the lawsuit *and* did not send summons to this office . . ." (Italics supplied.)

prejudice and injury to its position in the matter': Frank Parmelee Co. v. Aetna Life Ins. Co., 166 Fed. 741; Porter v. Traders Ins. Co., 164 N. Y. 504": Conroy v. Commercial Casualty Ins. Co., 292 Pa. 219, 224 (1928). See Cameron v. Berger et al., supra, at p. 233, Morris et al. v. Bender, 317 Pa. 533 (1935), McClellan v. Madonti, 313 Pa. 515, 518 (1934), Gough v. Halperin, 306 Pa. 230, 235 (1932). Cf. Ross v. Mayflower Drug Stores, Inc., supra.

The next consideration in the case, which embraces the remainder of garnishee's argument, as well as that of use-plaintiff, concerns the insurance applicable to the loss. Perplexing problems of coverage are arising with increasing frequency because of duplication of coverage caused by the tendency of modern standard forms of insurance contracts to give broad, and therefore, overlapping protection. It is no longer unusual to have duplicate coverage: three of the most usual situations are given to us in this case. First, because of the operation of the omnibus clause in the policy issued to Ray on his automobile, coverage is extended to Wessaw, the driver. This insurance is primary, and contributed along with that of defendant Regester to the primary insurance payment of $15,000. Second is the protection afforded Wessaw in the policy issued on his 1933 Chevrolet, which covers him if involved in an accident while driving another car. As pointed out above, coverage is afforded Wessaw's employer, as insured, in the same policy. Third, is use-plaintiff's non-ownership employer's contingent liability coverage, affording the employer protection where its agents or employes operating their own vehicles in the employer's business have an accident, and as the result of the accident and suit, the employer is held liable or jointly liable to the party injured. Both the second and the third types of coverage are designated "excess insurance" by terms of their respective contracts.

Use-plaintiff contends that the right of the master to go against the negligent employe gives rise to its right to have the judgment marked to its use and proceed against Wessaw. Consequently, in these garnishment proceedings it maintains the right to go against garnishee and be indemnified to the full limit of Wessaw's coverage. It contends that the only other insurance which Wessaw had was the $5,000 primary coverage extended to him by operation of the omnibus clause in Ray's policy, and that this was primary insurance. It also contends that the policy of non-ownership employer's contingent liability issued to it by the Indemnity Insurance Company of North America applies to its liability and to it, alone. It is obvious that Wessaw cannot claim any coverage under his employer's policy, and garnishee's counsel concedes Wessaw is not covered. The determination of what insurance applies to Wessaw's liability exists independent of the right of use-plaintiff to recover from Wessaw. In turn, the liability of garnishee to its insured, Wessaw, measures the right and the extent to which use-plaintiff may recover from garnishee, and this is governed by the terms of the policy it issued to Wessaw.

It is garnishee's contention that the employer, being an insured under the policy issued to Wessaw, is bound by Paragraph "8. Other Insurance." and therefore, its liability must prorate with the protection afforded the employer under its policy with the Indemnity Insurance Company of North America. This contention overlooks the point that the liability in question before us is that of Wessaw, and the problem we must decide is, what is the extent of Wessaw's protection under his policy, not what additional protection the policy might afford others whose liability is of no concern to us in these proceedings. It is undoubtedly true that the Middle Department Rating Association is an insured within the protection of Wessaw's policy covering it as a person legally responsible for Wessaw's negligence while

Wessaw is driving another than the insured car, and had the Middle Department Rating Association gone to garnishee when Scotney first brought suit, demanding that garnishee furnish it the protection given in Wessaw's policy, it would have been entitled to be protected to the full extent of liability limits set forth in the policy. But the Middle Department Rating Association is not asking garnishee to furnish protection to it, as employer, rather it is demanding payment from Wessaw, as it has a perfect right to do. The Middle Department Rating Association paid the $10,214.66 under the doctrine of respondeat superior, and has a claim over against its servant, Wessaw, for that amount. To recover from Wessaw, it had Scotney's judgment marked to its use, and in this proceeding is going against Wessaw alone. It must be borne in mind that Wessaw is a tortfeasor, who is primarily liable for his own negligence, and is liable over to his employer, who is only secondarily liable. Keeping in mind that the employer, having had the judgment marked to its use, is proceeding against Wessaw alone, the question is, what insurance did Wessaw have at the time of the accident? He had the omnibus clause coverage afforded him as the driver of Ray's car. He also had his own policy which covered him in the event he was involved in an accident while driving another car than his own. This is all the insurance he had. Wessaw is not covered under the Middle Department Rating Association's policy, and on this very important point the argument of garnishee falls: American Alliance Ins. Co. v. Brady Transfer & Storage Co. (C. C. A. 8, 1939), 101 F.(2d) 144, 147. Nor does the provision in garnishee's policy issued to Wessaw, which extends coverage to Wessaw's employer, mean that the Middle Department Rating Association is a co-insured with Wessaw. The provision in Wessaw's policy in favor of the Middle Department Rating Association is on account of its legal responsibility, as Wessaw's employer, for

Wessaw's negligence. In this sense, even under the terms of Wessaw's policy, the protection afforded each is not the same. It must be emphasized that the issue before us is the protection to Wessaw, under his policy with the General Accident Fire and Life Assurance Corp., Ltd., against the claim of his employer for reimbursement, and not the protection afforded the employer, as such, under Wessaw's said policy. As to the latter, Wessaw's and the Middle Department Rating Association's policies would prorate under their respective contracts of insurance; as to the former, there is no prorating because the Middle Department Rating Association's policy does not cover Wessaw at all. Consequently, it cannot be held that simply because the Middle Department Rating Association had the prudence to take out a policy with the Indemnity Insurance Company of North America covering exclusively its liability in just such a case as ours, that the insurance carrier of the negligent employe is to be let out of ten-elevenths of its contracted obligation to indemnify the negligent employe when a claim is presented against him, alone. We cannot hold that where the employer has insurance coverage for its own contingent liability, which coverage excludes all others than the employer, that when a claim is presented against the negligent employe, the employe's insurance carrier may avoid its contractual obligation to the employe. The effect of this would be to deprive Wessaw of the benefits of his policy. Wessaw paid a premium to the garnishee and secured coverage from it to limits of $10,000 for his liability in the event he had an accident while driving another car. In addition, he has bargained that if the car which he was driving already had insurance available to him, Wessaw, that the coverage which the garnishee afforded would be excess insurance, in addition to other insurance, and would protect him if the recovery against him exceeded the primary insurance.

It would be unjust for us to permit the Middle Department Rating Association to recover from Wessaw, as we are bound to do, and at the same time deprive Wessaw of the benefits of his policy of insurance with the garnishee. To permit this would be to allow garnishee, with one hand to extend coverage to the Middle Department Rating Association in Wessaw's policy, and with the other take away from Wessaw and his employer, both, the practical benefits of payment.

In conclusion, we say that the policy issued to Wessaw by the garnishee, being excess insurance over other valid and collectible insurance available to Wessaw, and the policy issued to the Middle Department Rating Association, alone, do not cover the same loss. They do not have identity of scope; the policy issued to Wessaw by garnishee becomes operative after payment of the primary insurance available to Wessaw under Ray's policy, the policy issued to the Middle Department Rating Association by the Indemnity Insurance Company of North America has no application whatever to Wessaw's liability. The two policies do not create the status of co-insurer, since they do not cover the same loss, or the same parts of the loss: Grasberger v. Liebert & Obert, Inc., 335 Pa. 491, 122 A. L. R. 1201 (1939) ; Speier ex ux. v. Ayling et al., 158 Pa. Superior Ct. 404 (1946) ; Commercial Casualty Ins. Co. v. Hartford Accident & Indemnity Co., 190 Minn. 528, 252 N. W. 434, 253 N. W. 888 (1934) ; Continental Casualty Co. v. Curtis Publishing Co. (C. C. A. 3 1938), 94 F.(2d) 710. To accept garnishee's contention would be to deprive Wessaw of the right to indemnity against his loss, not because he has other valid and collectible insurance protecting him, but simply because his employer, who is making the claim against him, had taken steps to protect its own liability.

Accordingly, use-plaintiff is entitled to a judgment against garnishee for $10,000, the limit of liability set out in its contract of insurance to indemnify Wessaw.

*Order*

And now, March 6, 1946, judgment is entered in favor of use-plaintiff, Middle Department Rating Association, against garnishee, General Accident Fire and Life Assurance Corporation, Ltd., in the sum of $10,000.