QUEEN INSURANCE COMPANY OF AMERICA v. EXCEL-
SIOR MILLING COMPANY.

No. 13,575.    (76 Pac. 423.)

SYLLABUS BY THE COURT.

1. INSURANCE— *Construction of Policy.* Contracts of insurance are to be construed, where construction is permissible, most strongly against the insurer and in favor of the insured.

2. CONTRACTS— *Forfeitures Not Favored.* Forfeitures are not favored by the law, and ordinarily will not be found or enforced unless specifically and definitely provided for in the contract.

3. FIRE INSURANCE— *Action on Policy—Answer Insufficient to Plead a Forfeiture.* A policy of insurance contained a clause providing that if the insured property was a manufacturing establishment the policy would be forfeited if the manufactory should cease to be operated for more than ten days. The property insured did not, from its description in the policy, clearly appear to be a manufacturing establishment. *Held,* that in an action on such policy an answer which did not contain a specific allegation that the insured property was a manufacturing establishment failed to plead a forfeiture because of its idleness.

Error from Cherokee district court; A. H. SKID-MORE, judge. Opinion filed April 9, 1904. Affirmed.

*Fyke Bros., Snider & Richardson,* and *John D. Beck,* for plaintiff in error.

*Sapp & Wilson,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : This was an action by defendant in error upon a policy of insurance issued by plaintiff in error. The plaintiff below had judgment. The only error here counted upon was the sustaining of a demurrer to one of the defenses contained in the answer of the insurance company. If this demurrer was properly sustained—that is, if the defense demurred to did not state any defensive matter—the judgment of the lower court must be affirmed.

The contract of insurance counted upon was contained more particularly in a written and printed slip attached to the policy issued, such slip, so far as material, being as follows :

"$400.00 on their frame building and additions, used principally for boiler, engine, crusher and jig room, including foundations, hoister house, derricks, platform approaches, tramways, tailing spouts and supports, iron rails, water-tanks and flumes.

"$200.00 on engines and boilers, immediate connections, including foundations and settings, breeching, smoke-stacks, brick boiler walls, supply pumps, and heaters.

"400.00 on fixed and movable machinery of every kind (except engine and boilers), including spur-wheel, crushers, rolls, jigs, screens, pumps, hoister engines and connections, foundations and settings, spouting, shafting, gearing, belting, posts, frames, elevators and connections, pulleys, hangers, idlers, tools, implements, rope, cars, tubs, oils, fuel, and supplies."

"Permission granted to run day and night, to make additions, alterations, and repairs ; to use coal-oil for lights, and to cease operations, provided same shall not remain idle or inoperative to exceed 30 days, at any one time, without notice to this company and consent indorsed hereon ; also to keep in premises one barrel each of cylinder, black, lard and coal-oil."

"This slip is attached to and forms part of policy No. 970375 of the Queen Ins. Co."

In the body of the policy was this further provision :

"This entire policy, unless otherwise provided by agreement indorsed thereon or added hereto, shall be void . . . if the subject of insurance be a manufacturing establishment and . . . it cease to be operated for more than ten consecutive days."

The defense to which the demurrer was sustained was in the following language :

"Defendant says that it was provided under said

policy that said plant might cease operations, provided the same should not remain idle or inoperative to exceed thirty days at any one time. Defendant alleges that about July 1, 1901, the same became idle and inoperative and so remained from that time up to the time of the fire [December 3, 1901], without notice to defendant and consent indorsed on said policy, by reason whereof defendant says plaintiff is not entitled to recover."

The claim of the plaintiff in error, therefore, is that the last clause contained in the slip, wherein permission is granted to cease operations provided the mill does not remain idle or inoperative to exceed thirty days at any one time without notice, creates a forfeiture *ipso facto* of the policy if the insured property so remain idle or inoperative. It must be noted that there is here no such specific provision. The language of the provision is not that forfeiture shall follow such unauthorized idleness. If we are to declare a forfeiture we must extend the express terms of the contract. This we may not do. Insurance companies are paid for protection. Their contracts are to be construed, when construction is permissible, most strongly against them and in favor of the assured. Forfeitures are not favored, and ordinarily will not be found or enforced unless specifically and definitely provided for in the contract. (*English v. Williamson*, 34 Kan. 212, 216, 8 Pac. 214; *Hartley v. Costa*, 40 id. 552, 559, 20 Pac. 208.) This principle nowhere finds more ready application than in contracts of insurance. (*Coleman & Co. v. Insurance Co.*, 49 Ohio St. 310, 31 N. E. 279, 16 L. R. A. 174, 34 Am. St. Rep. 565; *Murray v. Home Benefit Life Ass'n*, 90 Cal. 402, 27 Pac. 309, 25 Am. St. Rep. 133; *The Phenix Insurance Company of Brooklyn v. Tomlinson et. al.*, 125 Ind. 84, 25 N. E. 126, 9 L. R. A. 317, 21 Am. St. Rep. 203.)

As an aid to construction in such matters the courts note that where some of the clauses in a contract provide specifically for their forfeiture in case of the violation of their terms, and others omit this specific provision, such omission will be considered significant; and in cases where the clause was omitted courts much more readily come to the conclusion that no forfeiture was intended.   It was said in *Steele v. Insurance Co.*, 93 Mich. 81, 53 N. W. 514, 18 L. R. A. 85 :

"This omission in an instrument replete with clear and explicit declarations of forfeiture is worthy of note.   The presence of the declaration of forfeiture in every other instance and its absence in this is clearly not an oversight."

So here, a forfeiture is elsewhere in the policy specifically declared in case of a manufacturing establishment when it ceases to be operated for more than ten consecutive days, but no such specific provision as to the property insured is found in the slip.   We do not think that the clause contained in the slip, referring to the insured property's remaining idle or inoperative creates a forfeiture, *ipso facto;* therefore, a defense simply reciting that the insured property was so idle and inoperative for the prohibited time, but making no claim that the loss complained of was occasioned by reason thereof, states no defense to an action on such policy, so far as the provision contained in the slip is concerned.

It is, however, further urged that the insured property was a "manufacturing establishment," and, hence, that there was a forfeiture specifically provided by the other quoted condition of the policy.   The defense demurred to contained no allegation that the insured property was a manufacturing establishment; therefore, we can look only to its description as con-

tained in the slip.   While it may not count for much, we find the slip headed "Mining plant."   Looking to the particular description, nothing is there found to show that the insured property, or any part thereof, was a manufacturing establishment.   It may, or may not, have been.   *Prima facie*, one would hardly think so ; he would naturally think of a crusher or mining plant sooner than of what is ordinarily denominated a "manufacturing establishment," and a "mining plant" is not necessarily a "manufacturing establishment."   (*Byers v. Franklin Coal Company*, 106 Mass. 131 ; *Hittinger v. Westford*, 135 id. 258 ; *Hartranft v. Weigmann*, 121 U. S. 609, 7 Sup. Ct. 1240, 30 L. Ed. 1012 ; *Lawrence v. Allen et al.*, 7 How. 785, 12 L. Ed. 914.)

Had the pleader intended to claim a forfeiture for the reason that the insured property was a manufacturing plant, and that it had ceased to operate for the forbidden number of days, he should have embodied in his pleading such an allegation.   For these reasons we think that the defense attacked did not contain defensive matter, and, hence, that the demurrer was properly sustained.

The judgment of the district court will be affirmed.

All the Justices concurring.