No. 23,263.

E. G. WOOD, *Appellee,* v. AMERICAN AUTOMOBILE INSURANCE COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

AUTOMOBILE INSURANCE — *Automobile* — *Change of Ownership* — *Transporting Passengers for Hire*—*Policy Terminated.* A clause in a policy insuring against loss of an automobile by theft provided that any change in the ownership or interest of the assured, would immediately terminate the policy. Another clause provided that the policy should terminate if the car should be used for the transportation of passengers for hire. *Held,* that such prohibited use would avoid the policy whether or not the insured knew of such use, and further *held,* that the company, under the evidence, was not estopped to urge both defenses.

51—109 KAN.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed November 12, 1921. Reversed.

*J. H. Mitchell,* and *A. B. Mitchell,* both of Lawrence, for the appellant.

*C. C. Stewart,* of Lawrence, for the appellee.

The opinion of the court was delivered by

WEST, J.: The automobile insurance company appeals from a judgment of the district court of Douglas county holding it liable on a policy covering a car owned by the plaintiff, which was stolen, the contention being that he had sold it to his father-in-law who used it for jitney purposes in violation of a provision in the policy that any change of ownership or its use for livery or transportation of passengers should terminate the policy.

Complaint is made of an instruction to the effect that the company, having relied on a change of title, could not be heard to claim as another defense the use of the car for carrying passengers. In this instruction the court said:

"Now, if Mr. Wood permitted his father-in-law to use this car for family purposes, and his father-in-law, without the consent or knowledge of Mr. Wood, engaged the car in carrying passengers for hire, that would not invalidate the policy as against Mr. Wood. In other words, in order to invalidate this policy as to Mr. Wood for that reason, it must be devoted to the carrying of passengers for hire by Mr. Wood or by someone else with his knowledge and consent."

The answer set out a copy of the policy and alleged that both of the provisions referred to had been violated. The court also told the jury that if with the full knowledge of the defense that the car had been used for passenger purposes the company based its refusal to pay upon another reason than this, then the law precluded it from setting up such former matter as a defense.

"I say, if they chose to put their defense upon another ground with the full knowledge of the existence of this ground, then when the company is afterwards sued it will not be permitted to set up a defense that it did not insist upon before the suit was commenced."

Counsel complain that this tended to mislead the jury and call attention to a letter dated October 13, 1909, in which the company's agent stated that after considering the claim very carefully they advised that payment must be refused—

"First for the reason that ownership by completed sale to Mr. Leffler, and second for the reason that the policy was void the moment the car became used for the purpose of carrying passengers for hire."

The plaintiff's brief sets out a letter of October 17 in which the assistant manager stated:

"We have made a thorough investigation of this matter. . . . Our position is, as we believe you have already been advised, that your policy terminated by reason of a change of interest or ownership in that car and that consequently we are not liable for this loss. . . . Our objection is more substantial than that and that is that one of the fundamental provisions of the policy was violated and moreover that at the time the loss occurred no policy was in effect by reason of its previous termination."

As to the first of these instructions, the defendant claims that error was committed for the reason that the use of the car by the father-in-law for carrying passengers avoided the policy whether the plaintiff knew it or not. Counsel for the plaintiff says in his brief:

"Suppose the instructions concerning knowledge of use of the car had been different? The appellant had no right to assert this defense under its own evidence and the law of the matter, so they have lost nothing."

But we find nothing inconsistent in the two letters referred to and nothing which amounts to an estoppel upon the company to claim the benefit of either of the defenses of a change of title or a prohibited use of the car. The first letter states the two reasons, and defendant's brief quotes the provision of the policy which covers both change of title and use as a jitney and says that "payment was refused by it [the company] on the ground that it violated a provision of the policy which in substance is as follows" (quoting the two provisions).

It is urged that the testimony did not show a change of title but there was sufficient evidence from which the jury might have concluded that the title had changed. The father-in-law had made three payments of $25 each, and had taken out a license in his own name to carry passengers and set forth a sworn statement therefor that he had bought the car from the plaintiff; that it was delivered to him and that full understanding was had that he was to pay for it at the rate of $25 a month.

The plaintiff cites *Commercial Union Assur. Co. of London v. Hill,* (Tex. Civ. App.) 167 S. W. 1095. There, however, the only evidence of the breach of the clause against carrying pas-

sengers was that on two or three afternoons during the fair the plaintiff's son used the car, without his father's knowledge, for carrying passengers for hire to and from the fairgrounds. The court said that the clause was intended to mean that the owner should not make a business of using the car for hire, and that it was evidently never contemplated that the casual use of it as made in this instance would work a forfeiture. Here, the father-in-law testified that he used the car mostly for family amusement—

"And sometimes, of course, I hauled some passengers back and forth, morning and night. Of course, I worked twelve hours a day, and I haven't lost a day in three years. I didn't make a regular business of it, but—

. . . . . . . . . . . . .

"Q. But, you did use it for that purpose, mornings and evenings? A. Not altogether, but once in a while—once in a while I would make a trip."

This evidence, together with the fact of having taken out a license, puts the case in a different attitude from the one considered by the Texas court.

While insurance of automobiles against loss by theft is of recent origin, the principles applicable to fire insurance were considered in *Morgan v. Insurance Co.*, 104 Kan. 383, 179 Pac. 330, and former decisions on the question were therein cited, and within the spirit and logic of that decision there was sufficient evidence of a change of title and of passenger use to compel the holding that the instructions complained of were erroneous in the respects pointed out. The company insured a car to be owned by Mr. Wood—one not to be used for carrying passengers. The change of ownership would, of course, end the contract of insurance. Devoting the car to use as a jitney would have the same effect although Mr. Wood were in ignorance of such use. (19 Cyc. 727.) Insuring property against loss by fire or theft is accomplished by contract, and as in other transactions the terms agreed on must be observed.

The father-in-law's statement is sufficient to show passenger use, and the judgment is reversed with instructions to enter judgment for the defendant.