No. 40,457

PAYNE JAMESON, *Appellant,* v. THE FARMERS MUTUAL AUTOMOBILE INSURANCE CO., INC., *Appellee.*

(309 P. 2d 394)

Opinion filed April 6, 1957.

*Robert M. Baker,* of Ashland, argued the cause, and *Bryan Billings,* of Woodward, Okla., was with him on the briefs for the appellant.

*Lester Luther,* of Cimarron, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from an order of the trial court sustaining the demurrer of appellee to the evidence of appellant.

The pleadings will not be set out since they are not at issue here. The evidence was prefaced with some stipulated facts which will be condensed as much as possible without destroying salient parts thereof.

The first stipulation was that whenever the word *insured* was used in the pleadings, the term included along with the insured, John Lee Romans, any other person while *using* the insured automobile with Romans' permission, all as set out in section III of the policy. It was further stipulated that the accident occurred in Gage, Oklahoma, on August 15, 1953; that Romans owned the involved 1953 Buick coupe; that the Romans' Buick was insured with appellee for bodily injury, property damage, comprehensive liability cover-

age and collision; Romans was present in the automobile and Minnie Nicholson was driving the automobile at the time of the accident; appellee received a letter dated August 20, 1953, from Bryan Billings, appellant's attorney in Oklahoma (hereinafter referred to as Billings) which read:

"August 20, 1953

"Farmers Mutual Insurance Company
"3099 East Washington Avenue
"Madison 1, Wisconsin
"Gentlemen:

"I am attorney for Payne Jameson who was injured while riding in an automobile owned by your assured, John Lee Roman on August 15, 1953 at Gage, Oklahoma. Mr. Jameson sustained serious personal injuries in the wreck and has filed suit against Mr. Roman asking $5,000 damages for such injuries.

"Summons was served on Mr. Roman on August 20, 1953, and he must answer plaintiff's petition by September 17, 1953. I enclose a copy of the petition herein. I also enclose herein a notice of attorney's lien.

"Very Truly yours,
"Bryan Billings"

Appellee also received copy of the petition in the case of *Jameson v. Romans* in Woodward county, Oklahoma; on June 21, 1954, Billings notified appellee of the case of *Jameson v. Nicholson,* also in Woodward county, Oklahoma, and enclosed copy of the petition; Billings notified appellee of the whereabouts of Minnie Nicholson (hereafter referred to as Minnie); appellee did not make any formal defense in the Romans' case or in Minnie's case; certified copy of the journal entry in Minnie's case was admitted in evidence and a certified transcript of the proceeding in Minnie's case and also a certified transcript in the Romans' case were admitted.

Other stipulations admitted in evidence certain exhibits, including the insurance policy, pertinent portions of which read:

"INSURING AGREEMENTS:

·     ·     ·     ·     ·     ·     ·     ·     ·     ·     ·     ·

"(I) COVERAGES A AND B—BODILY INJURY AND PROPERTY DAMAGE LIABILITY

"(1) To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"(a) Bodily injury  .  .  .  sustained *by any person* caused by accident and arising out of the ownership, maintenance or use of the automobile.

·     ·     ·

"(II) DEFENSE SETTLEMENT, SUPPLEMENTARY PAYMENTS  .  .  . the Company shall:

"(a) defend any suit against the insured alleging such injury  .  .  . seeking damages on account thereof, even if such suit is groundless, false

or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"(III) DEFINITION OF INSURED

[covered by the first stipulation herein set out]

"CONDITIONS:

"The conditions, unless otherwise noted, apply to all coverages.

"(1) NOTICE OF ACCIDENT, COVERAGES A, B, AND C.

"When an' accident occurs written notice shall be given by or *on behalf of the insured* to the company or·any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

"(2) NOTICE OF CLAIM OR SUIT, COVERAGES A AND B.

"If claim is made or suit brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representatives.

.     .     .     .     .     .     .     .     .     .

"(6) ACTION AGAINST COMPANY, COVERAGES A AND B.

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial   .   .   .

"Any person   .   .   .   who has secured such judgment   .   .   .   shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person   .   .   .   any right to join the company as a codefendant in any action against the insured to determine the insured's liability." (Our emphasis.)

On November 10, 1953, Billings wrote appellee reminding it of the contents of his letter of August 20, 1953, and stating that Corbett L. Moore, the adjuster who was making an investigation on appellee's behalf, was given what information Billings had, and further that on September 15, 1953, Tom Wells of Kansas City, Missouri, had telephoned Billings on behalf of appellee and had stated he had been unable to locate Romans or Minnie and he wanted further information from Billings; Billings had told Wells the address of Romans' employer in Wichita; Billings later found that Romans was employed at the Osawatomie State Hospital and he conveyed this information to Wells, together with an offer to assist appellee by consenting to the filing of a belated answer on Roman's behalf; Billings had also offered to waive notice if appellee wanted to take Romans' deposition or he would discuss settlement with appellee; on November 5, 1953, Wells had called

Billings and stated that it was John Lee *Roman* at Osawatomie and not the insured, John Lee *Romans;* that the company had already denied liability because of assured's non-cooperation; Billings next notified Wells that Minnie was a patient of the Colorado State Hospital at Pueblo and she would be an additional insured under the policy omnibus clause; that she could not be guilty of non-cooperation until she knew of her coverage and appellee had asked for her cooperation; and finally, Billings reoffered his consent to appellee's filing a belated answer since judgment had not yet been taken in the Romans' case.

On November 16, 1953, appellee replied that it denied coverage for failure of cooperation, the accident had never been reported, it could not find insured, and therefore it could do nothing toward settlement.

On March 30, 1954, Billings notified appellee that the Romans' case would be tried on Monday, April 19, 1954, at 9:00 a. m. in the district court of Woodward county, Oklahoma. On April 2, 1954, appellee acknowledged Billings' letter of March 30, 1954, and repeated its denial of coverage, as previously set forth in appellee's letter of November 16, 1953.

On April 30, 1954, Billings sent appellee the journal entry of judgment against Romans dated April 19, 1954, for $2,990.00 and made demand for payment thereof under the policy.

On May 3, 1954, appellee again by letter denied coverage and refused to take action on the judgment.

On June 21, 1954, Billings again wrote appellee informing it of an action by appellant against Minnie as an additional insured under the policy, enclosing a copy of the petition, advising that Minnie was an inmate of Western State Hospital, Fort Supply, Oklahoma, and stating that summons had issued for service on her according to Oklahoma statutes with answer date of July 16, 1954.

On November 19, 1954, Billings again wrote appellee informing it of the suit and enclosing a certified copy of the journal entry of judgment for $2,990.00 and requesting payment thereof by appellee under the policy.

The record further shows Minnie had been an inmate of Western State Hospital, Fort Supply, Oklahoma, having been first admitted in 1942. She was on conditional leave from the hospital on August 15, 1953, the date of the accident here involved. She

was returned on April 19, 1954, and was an inmate at the time service of summons was served on her on July 16, 1954.

Certified copies of the petition, summons, and journal entry of judgment in the Romans' case in Oklahoma; certified copies of the petition, affidavit of service of summons, application for and order appointing a guardian *ad litem* for the insane person; answer of the guardian *ad litem*, an attorney of Woodward, Oklahoma, and journal entry of judgment in Minnie's case in Oklahoma along with a certified copy of the transcript showing Minnie appeared by the guardian *ad litem* were all admitted in evidence, a jury was waived, and trial was had before the court.

Corbett L. Moore, by deposition procured by appellee on March 29, 1956, testified he was requested by Wells of appellee's claim department to make an investigation of the accident and to get in touch with Mr. Romans to establish whether his car had been involved. He made a full written report to appellee on September 1, 1953. He reported he had been unable to locate either Minnie or Romans in Gage, Arnett, Shattuck, Fort Supply, or Woodward, Oklahoma.

The instant action was based on the certified journal entry of judgment in Minnie's case. After appellant rested his case, appellee demurred to the evidence and the trial court sustained the demurrer for the particular reason that appellant failed to show compliance with the conditions contained in paragraphs (1), (2), and (6) of the insurance policy in question. These sections are fully set out above under the "CONDITIONS" clause of the policy and will not be repeated.

Appellant does not contend nor does the record show that waiver or estoppel was pleaded as a defense for failure to give the required notice and therefore we will not discuss this since it must be pleaded before it can be proved. (*Insurance Co. v. Thorp,* 48 Kan. 239, 28 Pac. 991.)

Before considering the propositions advocated by the parties, it may be helpful to set out some general rules already pronounced by this court in order to show how the following discussion is in keeping therewith. As early as in' *Insurance Co. v. Milling Co.,* 69 Kan. 114, 116, 76 Pac. 423, this court said that insurance companies are paid for protection. Their contracts are to be construed, when construction is permissible, most strongly against them and in favor of the insured. Then we find the well-settled rule that where

a policy of insurance is so drawn as to require an interpretation, a construction most favorable to the insured will be adopted for the reason that the company prepares the contract of insurance, thereby selecting its own language. (*Brown v. Accident Insurance Co.*, 114 Kan. 337, 338, 219 Pac. 505.) These basic rules were cited in substance and with approval in *Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571, where the court added that as an insurer prepares its own contracts and it is its duty to make the meaning clear, if it fails to do so, the insurer and not the insured must suffer. Stated in another way, if the insurer desires to limit its liability, it should so state in the policy issued. (*Spencer v. Casualty and Surety Co.*, 116 Kan. 491, 494, 227 Pac. 357; *Chicago, R. I. & Pac. Rld. Co. v. Aetna Ins. Co.*, 180 Kan. 730, 308 P. 2d 119.)

Referring again to the Braly case, *supra*, it was there stated in substance that the words of a contract of insurance if clear and unambiguous are to be taken and understood in their plain, ordinary and popular sense (*Blair v. Automobile Owners Safety Ins. Co.*, 178 Kan. 615, 290 P. 2d 1028; *Bennett v. Conrady*, 180 Kan. 485, 305 P. 2d 823) so as to give effect to the intention of the parties. (*Youse v. Employers Fire Ins. Co.*, 172 Kan. 111, 238 P. 2d 472.) The yardstick used in the Braly case was that in determining this intention the test is not what the insurer intended the words of the policy to mean, but what a reasonable person in the position of an insured would understand them to mean. With these rules in mind, we approach the first proposition of whether there was sufficient written notice given to the insurer by *or on behalf of* the insured.

Insurance policy provisions requiring notice of accident, loss, injury or suit have been liberally construed in favor of the insured and should always be reasonably construed so as to justify them and conserve their true purpose for being a part of the contract. (Appleman's Insurance Law and Practice, § 4731, p. 93.)

While an injured party (here considered by the litigants a third party, appellant) is generally under no obligation to give notice, he could not recover under the policy unless he sees to it that the insurer is notified of the accident or suit so that it would be proper to hold that the injured person may satisfy the notice requirements under the policy. (Appleman's Insurance Law and Practice, § 4738, pp. 122, 123.) Such notice may be given by an additional insured, as Minnie was admitted to be, but could not be required

until she knew of the policy and her coverage thereunder. (Appleman's Insurance Law and Practice, § 4738, p. 124, § 4745, p. 143.) In other words, it mattered not who gave the notice so long as notice was given and the insurer had actual notice thereby, giving it an opportunity to make an investigation and to defend the suit. (Appelman's Insurance Law and Practice, § 4741, p. 131.) See, also, *Strole v. Combs*, 143 Kan. 647, 650, 56 P. 2d 111; and annotation at 6 ALR 2d 661. As stated in the policy, the only purpose for giving notice was served in every respect by the letters from Billings and the telephone conversations had by him with appellee's adjusters. Appellee had notice of the pendency of the actions for damages against the owner-insured Romans and the additional insured Minnie; it was advised of the claims and knew of every step taken in the damage actions. (*Elliott v. Behner*, 150 Kan. 876, 887, 96 P. 2d 852.)

For additional text authority supporting the foregoing statements see 7 Couch on Insurance, § 1507, p. 5384, § 1508, p. 5388 and 1957 Pocket Supp., §§ 1505-1, 1505-2, pp. 4, 5, § 1521a-1, pp. 8, 9; Volume II 1945 Cum. Supp. to Couch on Insurance, §§ 1505-1, 1505-2, pp. 1855, 1856, § 1507, pp. 1856, 1857, § 1508, p. 1859, § 1521a-1, p. 1874.

Appellee's contention of lack of failure to forward suit papers by the insured is covered by the same authorities set out on the question of notice even though this responsibility seems to fall midway between the giving of notice and the duty to cooperate. (Appleman's Insurance Law and Practice, § 4740, p. 126.)

This brings us to the question of failure of co-operation on the part of the insured, which is hinted by appellee but not strenuously urged. We will therefore mention only that this affects the insurer's duty to defend the insured, or the additional insured, which duty was covered to some extent in *Bennett v. Conrady*, supra. Along with this point we might mention that inability to locate a policyholder before trial must show substantial prejudice to the insurer in defending an action (Appleman's Insurance Law and Practice, § 4773, p. 156) but here the insurer made no effort to defend its insured. Any fact question as to bona fides concerns not only the good faith of the insured but that of the insurer as well. (Appleman's Insurance Law and Practice, § 4784, p. 182.) Such is the only proper rule in order to avoid conspiracy between an insured and an injured person to filch the coffers of an insurance company, and on the other hand to prevent conspiracy between an insurer

and an insured to defeat liability under a policy to some deserving person by having the insured absent himself from the trial.

It was not mentioned by the parties, and we do not give any consideration thereto, but under the terms of this policy we wonder whether appellant himself as user (passenger) of the car was not an additional insured by reason of the omnibus clause. As to use, see *Wood v. Insurance Co.,* 109 Kan. 801, 804, 202 Pac. 82; *Miller v. Farmers Mutual Automobile Ins. Co.,* 179 Kan. 50, 54, 292 P. 2d 711.)

We can only conclude that the notice of the accident was sufficient, appellee had full and complete notice of the suits, and there was no prejudice to appellee shown in the evidence produced in the record that justified the trial court in sustaining the demurrer thereto.

We have not particularly mentioned all points raised by the parties, but we are of the opinion they are fully disposed of by what has been said herein.

The judgment is reversed and the case remanded with directions to overrule the demurrer and proceed with the trial.