**Leona KINCAID et al., Plaintiffs,**

v.

**Don Ellsworth SMITH**
and
**Buckeye Union Casualty Company, Defendants.**

**Civ. A. Nos. 31100–31104.**

United States District Court
N. D. Ohio, E. D.

July 31, 1958.

As Modified Aug. 7, 1958.

---

10. Brant v. Virginia Coal & Iron Co., 1876, 93 U.S. 326, 334, 23 L.Ed. 927; Winchester v. Hoover, 1902, 42 Or. 310, 70 P. 1035; Gildersleeve v. Lee, 1921, 100 Or. 578, 198 P. 246, 36 A.L.R. 1166; Chestnut v. Chestnut, 1930, 300 Pa. 146, 151 A. 339, 75 A.L.R. 66; Culbreth v. Caison, 1942, 220 N.C. 717, 18 S.E.2d 136.

11. Title II, chapter 15, section 5, of former Code of St. Thomas and St. John; 28 V.I.C. § 4.

12. See Jones v. Cable, 1887, 114 Pa. 586, 7 A. 791; Redemptorist Fathers v. Lawler, 1903, 205 Pa. 24, 54 A. 487; Love v. Lindstedt, 1915, 76 Or. 66, 147 P. 935; Frasier v. Scranton Gas & Water Co., 1915, 249 Pa. 570, 95 A. 256. See, also, 1 Law of Future Interests, Simes and Smith, 2d ed. §§ 152, 153; 1 American Law of Property § 4.36; Tiffany on Real Property, 3d ed., § 421.

Frank Leonetti, Cleveland, Ohio, for plaintiff.

Frank Seth Hurd, of McConnell, Blackmore, Cory & Burke, Cleveland, Ohio, for defendant.

McNAMEE, District Judge.

In the above styled actions, which have been consolidated for trial, plaintiffs seek recovery from the defendant, Buckeye Union Casualty Company (hereinafter called Buckeye) of the amounts of judgments obtained by them against Don Ellsworth Smith. Buckeye contends that the judgments against Smith are invalid because this Court had no jurisdiction of the person of Smith. In the alternative, Buckeye contends that if said judgments be held valid its liability as insurer is limited to the amount of insurance required by order of the Public Utilities Commission of Ohio rather than by the larger limits set forth in the policy of insurance.

The facts are not in dispute. * They are set forth in a stipulation of the parties, supplemented by affidavits and the records of these actions in this Court and the 6th Circuit Court of Appeals.

A somewhat detailed statement of the relevant facts is essential to an understanding of the decision reached herein.

On April 15, 1952 defendant, Buckeye, issued a policy of liability insurance, effective from April 15, 1952 to April 15, 1953, insuring all trucks and motor vehicles owned and operated by Sells Motor Transport, Inc. Each motor vehicle was covered by a policy with limits of $50,000 for injury to one person and $100,000 for injuries to all persons in one accident where the injuries were occasioned by the negligence of the insured. By its terms the policy included as the "insured" not only the named insured, Sells Motor Transport, Inc., but "any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." Don Ellsworth Smith was an employee of Sells Motor Transport, Inc. Sells is a common carrier of freight and under the provisions of § 4921.11, Ohio Rev.Code was required

to and did file with the Public Utilities Commission of Ohio an insurance certificate satisfactory to the Commission. At the time in question the minimum amount of liability insurance required of a motor transportation company by the Public Utilities Commission of Ohio was $10,000 for bodily injuries to one person and $20,000 for all such injuries sustained in one accident.

On or about June 2, 1952, while the policy of insurance was in effect, one of the plaintiffs, who was the operator of a private automobile, and the other four plaintiffs, who were passengers therein, sustained personal injuries as a result of a collision between motor vehicles of Sells Motor Transport, Inc. and said private automobile on Route 24 near Canal Fulton, Ohio. One of the Sells vehicles was operated by Smith and the other by William Jacob Henry.

On March 24, 1953 plaintiffs instituted suits in this Court for the recovery of damages against Sells Motor Transport, Inc. Buckeye assumed the defense of these actions and filed answers on behalf of the defendant, Sells. Buckeye was promptly informed of the accident and made an investigation thereof, which included the taking of statements from both Smith and Henry. Some time in May 1954, while the actions against Sells were pending, counsel for plaintiff telephoned Mr. Paisley, of counsel for the defendant, in an effort to obtain an admission by defendant of the "agency" of the operators of the trucks involved in the accident. Paisley informed plaintiffs' attorney "that he had not sufficient information to enter into such a stipulation." Plaintiffs' counsel thereupon informed Paisley that plaintiffs would file actions against the operators of the vehicles. Paisley told plaintiffs' attorney he should do whatever he thought necessary. A short time later, and just before the statute of limitations had run, the above captioned actions were filed against Smith and Henry. Counsel for defendant noted the filing of the actions as reported in the Daily Legal News and promptly informed Buckeye thereof.

Service was not made upon Henry but on July 6, 1954 the United States Marshal made identical returns on the summonses directed to Smith, stating that on June 24, 1954:

"I did serve the within named Don Ellsworth Smith by handing to his landlady Mrs. Frank Rice, at 349 West 5th Street, Dover, Ohio, where Don Ellsworth Smith resides, a true and certified copy of this writ, together with copies of the complaint."

No answers were filed by Smith. Upon the failure of Smith to file answers plaintiffs' attorney again called Paisley and informed him that Smith was in default. Paisley replied that he did not know whether the cases against Smith would be defended by his firm. A few months later plaintiffs' attorney again called defendant's counsel and inquired whether Buckeye had decided to defend the actions against Smith. On this occasion plaintiffs' attorney talked to a Miss Phillips, associated with defense counsel, and she advised plaintiffs' attorney that Buckeye had decided not to defend the actions against Smith but if the company "changed its mind" answers would be filed in the near future. In the spring of 1956, and upon invitation of counsel for the defendant, plaintiffs' attorney went to the office of defense counsel where the possibility of settlement of the claims was discussed, but no agreement was reached. In May 1956 plaintiffs' attorney was notified by the Clerk of this Court that unless some action were taken in the cases against Smith they would be dismissed. Thereafter, on June 13, 1956, plaintiffs' attorney moved for default judgments. A jury was waived and the cases were heard by another member of this Court on June 29, 1956, and default judgments in favor of the plaintiffs were entered as follows:

| | | |
|---|---|---|
| No. 31100 – Kincaid | $ | 7,500 |
| No. 31101 – Rees | | 12,500 |
| No. 31102 – Richardson | | 6,500 |
| No. 31103 – Eppling | | 25,000 |
| No. 31104 – Reed | | 5,000 |

It is stipulated by the parties that Buckeye received no notice from Smith of the filing of the above actions or were any summonses or copies of complaints received by Buckeye from Smith or anyone acting in his behalf. It is further stipulated that prior to the rendition of the judgments Buckeye had knowledge of the pendency of the actions but entered no defense in behalf of Smith.

On September 17, 1956 plaintiffs filed their supplemental complaints against Buckeye, seeking recovery from the insurer of the amounts with interest of the default judgments. On October 6, 1956 counsel for defendant, Buckeye, filed motions on behalf of Smith to vacate the judgments. The motions were based on the ground *inter alia* that no suit papers had been served upon Smith. In support of the motions Smith filed an affidavit in which he stated that he did not receive any suit papers in the above captioned cases. However, he did not deny that he resided at 349 West 5th Street, Dover, Ohio on June 24, 1954, which was the date of service as shown by the Marshal's return, nor did he state that he had no knowledge of the pendency of the action before the default judgments were entered. In opposition to the motions plaintiffs filed an affidavit of Mrs. Frank Rice in which she stated that both she and Smith lived at 349 West 5th Street, Dover, Ohio on June 24, 1954. The motions were overruled by the trial judge, and appeals from his rulings were taken to the Sixth Circuit Court of Appeals, which affirmed the District Court. 249 F.2d 243.

The Court of Appeals held squarely that the District Court had jurisdiction over the person of Smith. In this connection the appellate court said:

"Appellant's contention that the judgments were void and should be set aside under the provisions of Rule 60(b) (4), Rules of Civil Procedure, because he did not personally at any time receive the suit papers is without merit. Service of process was made in accordance with the provisions of Rule 4(d)

(1), which do not require that the papers be served on a defendant personally or a showing that the papers were delivered to the defendant by the person with whom they were left. Jurisdiction over the appellant was accordingly acquired. The judgments were not void. Milliken v. Meyer, 311 U.S. 457, 462, 61 S.Ct. 339, 85 L.Ed. 278; United States v. Stabler, 3 Cir., 169 F.2d 995, 997; Maher v. Deam, Ohio App., 137 N.E. 2d 149."

### The Validity of the Judgments

■■ In its answers to the supplemental complaints Buckeye alleges that no service was had upon Smith and that this Court has no jurisdiction of the action. Thus Buckeye attempts to raise again the question of the validity of service on the original complaints. In support of this allegation defendant proffers the stipulated fact that if Mrs. Frank Rice were called as a witness for defendant she would testify "that summonses and copies of the complaints were never handed or delivered to her nor placed in her possession or custody for Smith." This stipulation is based upon testimony given by Mrs. Rice on deposition in May 1958, almost four years after the commencement of these actions. It is not suggested that in the exercise of due diligence the proffered testimony could not have been produced at the hearing on the motion to vacate. Apart from the question whether the belated testimony of Mrs. Rice would be sufficient to overcome the presumptive verity of the Marshal's return, it is clear that upon well-settled principles defendant is precluded from offering such testimony in this proceeding. While the defense of res judicata has not been specially pleaded, both parties have recognized that this issue is in the case and have argued the question in their briefs. The doctrine of res judicata operates to preclude the defendant from raising again the identical question decided by this Court and affirmed by the Court of Appeals on the motions to vacate the judgments. The doctrine of res judicata applies to every question "falling within the purview of the original action in respect to matters of both claim and defense which could have been presented by the exercise of due diligence." 30A Am.Jur. 417, § 372. The doctrine applies also in cases involving the question of jurisdiction over the person. Restatement of the Law of Judgments, p. 50, § 9. Comment (a) following the rule as declared in the above section of the Restatement states the reason supporting the rule as follows:

"If the defendant appears in an action for the purpose of objecting that the court has no jurisdiction over him, he thereby submits to the court for its determination the question whether the court has jurisdiction over him. If the court erroneously determines that it has jurisdiction over the defendant, he has ground for reversal in an appellate court, and ground for carrying the case to the Supreme Court of the United States since a judgment rendered against him by a court having no jurisdiction over him deprives him of property without due process of law in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States. If, however, he does not avail himself of these remedies, or if the judgment is affirmed, or if the appellate court or the Supreme Court of the United States declines to consider the case, the defendant cannot thereafter successfully contend that the judgment was void, even though in fact the court had no jurisdiction over him. The defendant, having submitted the question of jurisdiction to the court, the court has jurisdiction to determine the question of its jurisdiction over the defendant, and the determination of that question is res judicata."

Comment (c) on p. 54 of the Restatement is to the same effect.

It is well established that the doctrine applies to parties to the judgment and their privies. It is not open to question that the general rule is applicable here.

Buckeye was no stranger to the adjudication of the issues raised by the motions to vacate the judgments. Through its counsel, Buckeye filed such motions on behalf of Smith and actively participated in the hearings upon the motions in both the District and Appellate courts. The principles that govern here are stated in Quinn v. State, 118 Ohio St. 48, 53, 160 N.E. 453, 455, quoting 15 R.C.L. § 483, p. 1007, as follows:

" * * * the term 'parties', within the meaning of the rule making prior judgments conclusive on such, has been held to include all who are directly interested in the subject-matter of a suit and who have a right to make defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment, and a person though not technically a party to a prior judgment may nevertheless have been so connected with it by his interest in the result of the litigation, and by his active participation therein, as to be bound by such judgment. The courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment which may be rendered. * * In other words, by participating in the proceedings one is estopped by the judgment as to any questions actually litigated and decided therein."

A more succinct statement of the same rule is found in 30A Am.Jur. § 401, p. 456.

The foregoing rule applies with particular force under the facts of this case. The motions to vacate the judgments were filed by counsel for defendant, Buckeye, after said defendant had been made a party to these actions. While the motions were filed on behalf of Smith, they were designed to serve the interests of Buckeye as well.

I hold that defendant is estopped by the former judgments of this Court and the Court of Appeals from re-litigating the issue of this Court's jurisdiction over the person of Smith.

### To What Extent Is Buckeye Liable for Payment of the Judgments against Smith?

Section 4921.11 Rev.Code of Ohio provides in part:

"No certificate of public convenience and necessity shall be issued by the public utilities commission to any motor transportation company until it has filed with the commission a liability insurance certificate, policy, or bond satisfactory to the commission, in such sum and with such provisions as the commission deems necessary adequately to protect the interests of the public * * *."

See also Sections 4923.01, 4923.99 O.R.C.

█ Pursuant to the authority conferred by the statutes, the Public Utilities Commission of Ohio adopted regulations governing the amount and terms of such policies of liability insurance. The primary purpose of the statutory and administrative legislation is to afford protection to members of the public against loss arising from injuries resulting from the negligent maintenance or use of motor vehicles on the highways of the state.

On April 15, 1952 the master policy of insurance providing coverage up to $50,000 for injuries to one person and $100,000 for all injuries in one accident was filed with the Public Utilities Commission of Ohio. Attached to the policy was an endorsement required by the Commission which included a schedule of the minimum amounts of liability insurance required by law and a stipulation providing, in effect, that no breach by the insured of the conditions or agreements of the policy shall be available as a defense to the insurer in any action brought against it by an injured person on a judgment rendered against the insured. A further stipulation in the endorsement provided that no such breach shall "relieve the insurance company from the liability pro-

vided for in this endorsement or from the payment to such person of any judgment within the limits set forth in the policy." The endorsement contained numerous other provisions not necessary to be noticed here. In addition to the endorsement there was filed with the policy a certificate of insurance reciting that:

"The policy of automobile bodily injury liability and property damage liability insurance herein described has been amended to provide the coverage or securtiy for the protection of the public with respect to the operation, maintenance or use of motor vehicles within the State of Ohio, under a certificate or certificates of public convenience and necessity, * * * by the attachment of a signed copy of the endorsement and schedule of amounts of insurance adopted by the said Commission, under its Administrative Order No. 138 * * *."

Plaintiffs argue that by virtue of the provision in the endorsement requiring the insurer to pay any judgment "within the limits set forth in the policy" Buckeye is liable to plaintiffs for the full amount of the judgments. Defendant contends that by the terms of the endorsement and the certificate of insurance filed therewith the master policy was amended to provide an absolute liability in favor of plaintiffs only to the extent of the minimum amounts of insurance required by law. Buckeye concedes that if the judgments are valid it is liable to plaintiffs to the extent of the minimum amount of compulsory insurance, which is $20,000 for all injuries in one accident. It is Buckeye's position that the insurance provided by the master policy in excess of $20,000 represents coverage voluntarily procured by the insured primarily for its own benefit but also for the benefit of injured third parties and that as to such excess coverage the rights and liabilities of the parties are governed by the same principles that apply in cases where the entire coverage of the policy constitutes a voluntary undertaking of the insured. Buckeye asserts, therefore, that as to the excess coverage over the m‍i‍‍‍mum requirements of law the rights of plaintiffs derive from those of the insured and any breach by the latter of the conditions of the policy is available as a defense to the insurer.

The issue thus raised presents a close and interesting question, the determination of which would involve a construction of the terms of the master policy considered with the applicable statutes, regulations, endorsements and the certificate of insurance filed with the policy. However, I find such a determination unnecessary to a proper disposition of the cases.

Buckeye asserts as a defense the claim that Smith, the insured, breached the following condition of the policy:

"If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

It is true that Smith failed to comply with the above condition. However, even if it be assumed that the extent of Buckeye's liability over and above the minimum required amount of $20,000 must be determined upon principles that govern in cases of voluntary insurance, it does not follow that Smith's alleged dereliction is fatal to plaintiffs' right to recover within the larger limits of the master policy.

This action is brought under favor of Sections 3929.05 and 3929.06 Rev.Code of Ohio (former Sections 9510–3, 9510–4 G.C.) The Supreme Court of Ohio has held that these sections afford an injured person direct and prompt benefit of the provisions of an indemnity policy of the insured. But the cases also hold that the injured person "succeeds to only the rights of the insured and cannot recover in an action on the policy against the indemnity company if there has been such a breach of the contract by the insured as would prevent a recovery by him." Luntz v. Stern, 135 Ohio St. 225,

20 N.E.2d 241, 242; Stacey v. Fidelity & Casualty Co., 114 Ohio St. 633, 151 N.E. 718; In re Estate of Basmajian, 142 Ohio St. 483, 52 N.E.2d 985. Thus, under Ohio law, the violation by an insured of the conditions of a policy requiring him to give notice to the insurer of the occurrence of an accident; to deliver suit papers to the insurer or a failure by the insured to co-operate in the defense of an action, are such breaches of the conditions of the policy as prevent a recovery thereunder by the injured person. However, it is also the law of Ohio, as declared in Hartford Accident & Indemnity Co. v. Randall, 125 Ohio St. 581, 183 N.E. 433, that:

"A person injured by the assured in such manner as to entitle the assured to indemnity under the policy has such potential beneficial interest in the policy, by the provisions of section 9510–4, General Code, as to warrant such injured person to comply with the terms and conditions of the policy agreed to be performed by the assured, even though such performance be without the knowledge or concurrence of the assured, and a waiver to such injured party is equivalent to a waiver to the assured." (Syllabus par. 4.)

In the Randall case, counsel for plaintiff informed an agent for the insurance company of the former's intention to file suit against the insured and inquired whether he should send a copy of the petition to the agent. The agent replied, "No, it is no use—we are not going to defend Anderson." The definitive holding in the Randall case was that the insurance company was estopped by such statement of the agent from asserting its right to a compliance with a condition requiring notice of the suit to be given.

██ No issue of estoppel arises here but the holding in Randall that an injured person has the right to comply with the conditions of the policy is controlling authority in support of plaintiffs' right to notify the insurer of the pendency of the actions against Smith.

The rationale of the court's decision on this point in Randall is stated as follows:

"It must be held that by virtue of section 9510–4 G.C. an injured person has a potential interest and a substantial right in the policy from the very moment of his injury, and, although it does not develop into a vested right until the judgment is secured, his rights are such, even before judgment, as to entitle him to comply with the terms and conditions of the policy, and thus make them effective in his behalf in the event the insured fails to discharge his duty under the policy."

Among the reasons stated in support of the above quoted rule, the court declared that an injured person who by statute is subrogated to the rights of the insured is also obligated to the performance of the insured's duties. The court also noted the possibility of collusion between a person carrying insurance, who is not financially responsible, and the insurance company for the purpose of defeating a claimant. In this connection the court said:

"If it should be held that the notice must be given by or through the insured, the door might be opened to fraud and collusion which would be made the means of defeating just claims."

In the Randall case, as here, the original action was brought against an insured who was not named as such in the policy but who sustained that relation to the insurer solely by virtue of an omnibus clause in the policy that extended its coverage to persons operating the motor vehicle with the permission of the owner. It appears from an examination of the Randall case that in holding that an injured person had a right to perform the conditions of the policy the court made no distinction between cases where the injured person brought his original action against the named insured or those in which suit was brought against an insured who was included in that classification by a general provision of the policy

extending its coverage to persons operating the motor vehicle with the permission of the owner. However, it would seem that in cases where the injured person's original action is against an unnamed insured reasons of great force and cogency support the right of the injured person to comply with the conditions of the policy. A named insured, by his acceptance of the policy, is bound by all of its terms and conditions on well settled principles of the law of contracts. An unnamed insured, however, may not even know that he is covered by the policy of insurance; he may not know the name of the insurance company and rarely will such an insured have knowledge of the terms and conditions of the policy. A person who has no knowledge of the rights and duties devolving upon him under a contract of insurance to which he was not a party cannot reasonably be held to the same strict standard of compliance with the conditions of the policy as a party to such contract who has the policy in his possession and who knows or is bound to know his rights and obligations thereunder.

It is not suggested that where such lack of knowledge exists the insurance company may be held liable to an injured person notwithstanding the failure of an unnamed insured to comply with the conditions of the policy. However, it is suggested that where the injured person complies substantially with the conditions of the policy and by such compliance places the insurance company in the same position it would have been in had the insured not defaulted, there is no reason in logic or law why an insurance company should escape liability on the ground of the insured's failure to perform. Unless injured persons are permitted to perform the conditions of the policy grave and serious miscarriages of justice may result.

Here the record does not show whether Smith knew that he was covered by the policy or whether he had any knowledge of its terms and conditions. Nor does it appear that at the time that these actions were filed in June 1954, almost two years after the accident, Smith was in the employ of Sells Motor Transport, Inc. But whatever may have been the situation in respect of Smith's knowledge or lack of knowledge of his rights and duties under the policy, it is clear that his failure to deliver the suit papers or to notify the insurance company of the pendency of the actions resulted in no prejudice to the company. Buckeye had received notice of the accident. It was prepared fully to defend the actions against Sells. During the pendency of those actions plaintiffs' attorney notified defendant's counsel of his intention to file actions against the employees of Sells because of the refusal of defendant's counsel to stipulate that at the time of the collision the employees were acting within the scope of their employment.

■ Immediately following this notification the actions against Smith were filed. As was to be expected, counsel for the defendant promptly notified the insurer of such filing. Thereafter plaintiffs' attorney notified defendant's counsel on at least two occasions that Smith was in default. Even after being advised on the second such occasion that Buckeye would not defend the actions against Smith, plaintiffs' attorney made no effort to obtain default judgments. Indeed it was not until after May 1956, when he was advised by the Clerk of this Court that the cases would be dismissed if not set down for proof, that plaintiffs' attorney moved for judgment by default. Thus for a period of about two years Buckeye had knowledge of the pendency of the actions against Smith and was afforded abundant opportunity during that time to defend on his behalf. This was more than an adequate substitute for the notice Buckeye would have received had Smith known of and complied with the conditions of the policy.

Ohio is not alone in holding that an injured person has such a potential interest and substantial right in the policy as to comply with the terms of the policy and make them effective in his behalf. Hartford Ins. Co. v. Randall, supra. See also federal and state cases cited in Ran-

dall. Simmon v. Iowa Mutual Casualty Co., 3 Ill.2d 318, 121 N.E.2d 509; Pallasch for Use of McNamara v. United States Fidelity & Guaranty Co., 329 Ill. App. 257, 67 N.E.2d 883; McClellan v. Madonti, 313 Pa. 515, 169 A. 760; Morris v. Bender, 317 Pa. 533, 177 A. 776; 29 Am.Jur. 818, § 1090; 5A Am.Jur. pp. 154–156.

The following statement from the opinion of the Supreme Court of Kansas in the recent case of Jameson v. Farmers Mutual Automobile Ins. Co., 1957, 181 Kan. 120, 309 P.2d 394, 399 is pertinent:

\ "While an injured party (here considered by the litigants a third party, appellant) is generally under no obligation to give notice, he could not recover under the policy unless he sees to it that the insurer is notified of the accident or suit so that it would be proper to hold that the injured person may satisfy the notice requirements under the policy. Appleman's Insurance Law and Practice, § 4738, pp. 122, 123. Such notice may be given by an additional insured, as Minnie was admitted to be, but could not be required until she knew of the policy and her coverage thereunder. Appleman's Insurance Law and Practice, § 4738, p. 124, § 4745, p. 143. In other words, it mattered not who gave the notice so long as notice was given and the insurer had actual notice thereby, giving it an opportunity to make an investigation and to defend the suit. * * *

* * * * * *

"Appellee's contention of lack of failure to forward suit papers by the insured is covered by the same authorities set out on the question of notice even though this responsibility seems to fall midway between the giving of notice and the duty to co-operate. Appleman's Insurance Law and Practice, § 4740, p. 126." 309 P.2d at page 400.

The Ohio cases cited by defendant are not in point. In Decker v. Kolleda, 57 Ohio App. 442, 14 N.E.2d 417 no notice of the accident or any claim under the policy was received by the insurer until almost 22 months after the accident occurred. The court held that a failure of the insurer to defend the action when notified of its pendency did not constitute a waiver of the policy provisions as to notice of the accident. No comparable situation exists here.

In Rohlf v. Great American Mutual Indemnity Co., 27 Ohio App. 208, 161 N.E. 232, it was held that the insurance company was not liable because of the failure of the insured to co-operate in the defense of the action. The strong dissent in that case casts doubt on the soundness of the decision of the court. However, there is no issue of nonco-operation in the case at bar. Hunsicker v. Buckeye Union Casualty Co., 95 Ohio App. 241, 118 N.E.2d 922, 925, did not involve an action against the insurer under 9510–4 G.C. but was an action for damages against the insurer predicated upon its alleged negligence in failing to defend an action against the insured. The facts in that case are not even remotely analogous. The court denied recovery on the dual grounds of the insured's contributory negligence and the inability of the court "to measure the nebulous damages claimed herein." The statement of the court that notice by the attorney for plaintiff to the insurer of the pendency of the original action was notice given by a stranger to the suit, is dictum and at variance with the principle laid down in Hartford Accident & Indemnity Co. v. Randall, supra.

In Gergely v. Pioneer Mutual Casualty Co., Ohio App., 74 N.E.2d 432, recovery against the insurer was denied in part because of the failure of the injured party to give notice to the insurer of the pendency of the action not less than 15 days prior to the taking of judgment as required by the provisions of the Ohio Financial Responsibility Act set forth in § 6298–7, G.C.

Defendant also contends that its counsel was not authorized to waive any condition of the policy. As indicated above, no issue of waiver or estoppel arises in

this case. This argument is therefore irrelevant.

The total amount of the judgments against Smith is $56,500 and is within the limits of liability of the master policy.

For the reasons assigned I hold that, wholly apart from its liability under the regulations of the Public Utilities Commission of Ohio and the endorsement of the policy filed pursuant thereto, defendant Buckeye is liable to plaintiffs in the amounts of the judgments against Smith with interest. Judgments may be entered accordingly.

This opinion shall serve as findings of fact and conclusions of law pursuant to Rule 52(a) F.R.C.P., 28 U.S.C.A.